<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GARY SAYERS,

          Petitioner,

          v.

BRUCE DAVIS, et al.,

          Respondents.

Civil Action No. 19-239 (KMW)

**OPINION**

**WILLIAMS**, District Judge:

This matter comes before the Court on Petitioner Gary Sayers's Petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF No. 1.) Following an order to answer, Respondents filed a response to the Petition (ECF No. 7), to which Petitioner replied. (ECF No. 10.) Also before the Court are Respondents' motion to submit portions of the state court record as within time (ECF No. 15) and Petitioner's motion seeking to supplement the record. (ECF No. 17.) Having reviewed the motions, both motions (ECF Nos. 15 and 17) are granted. For the following reasons, this Court will deny the Petition, and will deny Petitioner a certificate of appealability.

**I.    BACKGROUND**

In its opinion affirming the denial of Petitioner's post-conviction relief (PCR) petition, the Superior Court of New Jersey – Appellate Division summarized the background of Petitioner's conviction as follows:

> In August 2006, a grand jury in Atlantic County returned [an indictment] charging [Petitioner], Derrick Johnson, and Steven L.

McGuire with various offenses. McGuire entered into a plea agreement with the State. [Petitioner] and Johnson were tried before a jury.

At the trial, evidence was presented which established that on June 22, 2006, at approximately 11:00 p.m., the TGI Fridays in Somers Point closed for the evening, but five employees remained in the restaurant: the kitchen manager, assistant kitchen manager, bartender, a cook, and the dishwasher. About twenty minutes later, the cook went outside to discard some trash, and he was confronted by [Petitioner], who pointed a gun at him. McGuire and Johnson were also present.

[Petitioner] and Johnson were wearing regular ski masks, while McGuire was wearing a stocking as a mask. [Petitioner] had a silver revolver, and Johnson had a black revolver. McGuire was carrying a BB gun, which looked like a black revolver.

[Petitioner] ordered the cook to tell him how many persons were inside and where they were located. At gunpoint, the cook was taken inside and directed to a dry good storage area. On the way, they came upon the assistant kitchen manager and the dishwasher, who were also taken to the storage area. [Petitioner] asked the assistant kitchen manager where the safe was located, and she directed him to the bar area.

The intruders made their way to the bar area, where they found the kitchen manager and bartender. Johnson ordered the bartender to go to the storage area, and told him to bind the other employees' hands with duct tape. [Petitioner] emptied the cash drawer at the bar, taking about $900. [Petitioner] then ordered the kitchen manager to take him to the safe, and told him to open it.

When the kitchen manager said he was not able to do so, [Petitioner] jabbed him in the head with the pistol and told him to open the safe. However the kitchen manager could not access the bottom portion of the safe, and he was sent back to the storage area. McGuire and Johnson took money and cell phones from several workers.

At gunpoint, the employees were forced into the beer cooler. They heard the padlock being placed on the door, but the lock was faulty and one of the employees was able to open the door. The employee noticed that the intruders had departed and he called the police.

The following day, McGuire met his girlfriend and asked her to meet him in a motel in Atlantic City. McGuire was in possession of about $1200 in cash. McGuire told his girlfriend he obtained the money in a robbery which he, [Petitioner], and Johnson committed at TGI Fridays. McGuire instructed his girlfriend not to tell anyone where he got the money.

McGuire's girlfriend nevertheless reported the robbery to the police, and an officer of the Somers Point Police Department (SPPD) asked her if she knew where he could locate McGuire. She told the officer she did not know where he was, but she would contact him and try to convince him to turn himself in to the police. She contacted McGuire, who called [Petitioner] and relayed what his girlfriend told him.

[Petitioner] decided that he, Johnson, and McGuire should leave the area so they traveled to New Hampshire. McGuire informed [Petitioner] that he wanted to turn himself in to the police. [Petitioner] and Johnson told him not to do so. McGuire testified he was afraid that [Petitioner] and Johnson would kill him.

Eventually, McGuire's girlfriend persuaded McGuire to turn himself in to the police and he was arrested in Atlantic City on July 7, 2006. Detective Robert Somers of the SPPD interviewed McGuire, who identified [Petitioner] and Johnson as the other persons who committed the robberies. Based on that information, Somers obtained arrest warrants for [Petitioner] and Jonson. They were arrested in Atlantic City.

[Petitioner] signed a consent-to-search form, which authorized a search of his car. In the car, the police found a white bag containing McGuire's identification and a folding knife. A black hoodie, two woolen masks, and nine gloves also were found in the car. Tests showed that Johnson's DNA was inside one of the gloves, and [Petitioner]'s DNA was on the inside and outside of one of the masks and on the collar of the hoodie.

[Petitioner]'s former girlfriend testified that she had been living periodically with [Petitioner] in New Hampshire. She said [Petitioner] owned a silver revolver that matched the description of the gun used by one of the robbers. She also stated that shortly before the robberies, she and [Petitioner] broke off their relationship.

She said [Petitioner] left to return to New Jersey and took the gun with him. She also said she overheard a telephone conversation between [Petitioner] and Johnson before [Petitioner] left. During

3

that call, [Petitioner] told Johnson he had a gun.  [Petitioner] said they were "going to roll" once he returned to Atlantic City.

The jury found [Petitioner] guilty of: first-degree conspiracy to commit robbery[,] five counts of first-degree robber[,] second-degree burglary[,] five counts of third-degree criminal restraint[,] five counts of fourth-degree aggravated assault with a firearm[,] three counts of second-degree possession of a weapon for an unlawful purpose[,] three counts of third-degree possession of a handgun without a permit[,] and second-degree certain persons not to possess weapons[.]

The trial judge granted the State's motion for imposition of an extended term and sentenced [Petitioner] on [the robbery charge] to fifty years of incarceration, with an eighty-five percent period of parole ineligibility, pursuant to the No Early Release Act (NERA)[.] The court imposed a consecutive ten-year term, subject to NERA, on [the second degree burglary charge]; and a consecutive ten-year term on [the certain persons offense] with a five-year period of parole ineligibility.  The court also imposed concurrent sentences on the other counts.

. . . .

[Petitioner] appealed from the judgment of conviction dated November 12, 2008.  [The Appellate Division] affirmed [Petitioner]'s convictions except for the [conspiracy] conviction[,] and remanded the matter for entry of an amended judgment. . . . The [New Jersey] Supreme Court thereafter denied [Petitioner]'s petition for certification. . . .

On May 13, 2011, [Petitioner] filed a pro se PCR petition, in which he alleged he was denied the effective assistance of trial counsel.  He also claimed that the assistant prosecutor had improperly withheld a videotaped statement of the State's chief witness, which [Petitioner] alleged contained exculpatory evidence. The trial court appointed PCR counsel who filed a brief in support of the petition.

In oral argument before the PCR court, [Petitioner] asserted that trial counsel's performance was deficient because counsel: (1) had little to no contact with him before trial; (2) did not convey the State's plea offer until the day of trial; (3) did not provide him with discovery; and (4) did not undertake an adequate pretrial investigation or call additional witnesses.  In addition, [Petitioner] alleged the State had withheld evidence material to his defense.  The

4

>PCR court rejected these claims and entered an order dated October 10, 2012, denying PCR.
>
>[Petitioner] appealed. [The Appellate Division] determined that the record supported the PCR court's finding that [Petitioner] was provided with the State's plea offer six months before the trial, but the record was not sufficient to resolve [Petitioner]'s claims that his attorney failed to provide him with discovery, and failed to adequately investigate the case and call additional witnesses. . . . [The Appellate Division] remanded the matter to the PCR court for an evidentiary hearing on these claims, and directed the court to reconsider [Petitioner]'s contention that the State had not provided [Petitioner] with evidence material to the defense. . . . [The Appellate Division] also directed the PCR court to consider [Petitioner]'s claim that his arrest was illegal and his claim that the complaint was not signed under oath or in the presence of a deputy clerk or other authorized person. . . .
>
>. . . .
>
>The PCR court conducted the evidentiary hearing on March 17, 2016. On May 19, 2016, the court filed a written opinion setting forth its findings of fact and conclusions of law. The court determined that [Petitioner] had not been denied the effective assistance of trial counsel.
>
>The court found that [Petitioner]'s claim that his attorney did not provide him with discovery was refuted by the testimony and evidence presented at the hearing, and the record did not support [Petitioner]'s claim that his attorney did not adequately investigate the case. The court also found that [Petitioner] had not shown the result of the proceeding would have been different if counsel had handled the matter differently.
>
>In addition, the court rejected [Petitioner]'s claim that his arrest was illegal because the arresting officer did not have a warrant, and his claim that the complaint had not been signed under oath in the presence of a deputy clerk or other authorized person.

(ECF No. 7-31 at 1-9.)

## II. <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the]

6

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. DISCUSSION

#### A. Petitioner's Ineffective Assistance Claims

In the majority of his claims, Petitioner contends that he received ineffective assistance of counsel. The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the

7

>proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his central ineffective assistance of counsel claim,[1] Petitioner contends that his trial counsel[2] failed to challenge his arrest and argue that Petitioner was not properly arrested pursuant to a warrant. The Appellate Division rejected this claim, explaining as follows:

>[Petitioner] notes that his arrest warrant has been identified as W-2006-0382, but he asserts that the surrender report of the Atlantic City Police Department does not indicate that the officers relied upon that warrant when he was arrested. The record includes pages ten, eleven, and twelve of the report.
>
>>On page ten, the report states that [Petitioner] and Johnson were arrested by officers of the ACPD. Pages ten and eleven of the report describe Johnson's arrest, and indicate that he was taken into

---

[1] This claim is raised in Plaintiff's grounds two, four, and eight, which assert ineffective assistance of counsel as to the failure to challenge the warrant, that the state courts erred in not holding a hearing on this claim, and that counsel were ineffective in failing to challenge the warrant by arguing that there had been no underlying showing of probable cause to support the issuance of an arrest warrant.

[2] Petitioner also contends that Appellate and PCR counsel were ineffective in failing to fully pursue this claim. As to appellate counsel, that argument fails for the same reasons as those applicable to trial counsel – the record fully supports the conclusion hat Petitioner was lawfully arrested pursuant to a valid warrant. As to PCR counsel, Petitioner's claim is utterly without merit as ineffective assistance of PCR counsel is not a valid ground for habeas relief. *See* 28 U.S.C. § 2254(i).

custody at a location on North Maryland Avenue in Atlantic City. Page eleven of the report states that both suspects were taken into custody without incident and turned over to the Somers Point police for processing. Page eleven refers to warrant W-2006-0378, the warrant issued for Johnson's arrest.

Page twelve of the report described [Petitioner]'s arrest and indicates that [Petitioner] was arrested at a location on North Magellan Avenue in Atlantic City before Johnson was arrested. Warrant W-2006-0382, the warrant for [Petitioner]'s arrest, is not cited on this page. However, the record includes warrant W-2006-0382, which is dated and signed as of July 7, 2006. [Petitioner] has conceded he was arrested that day.

Therefore, the record establishes that a warrant for [Petitioner]'s arrest was issued the day he was taken into custody. Furthermore, there is nothing in the record which supports the claim that the ACPD officers arrested [Petitioner] without first obtaining the warrant.

On appeal, [Petitioner] also asserts that the SPPD investigation report dates July 9, 2006, which was prepared by Somers, "appears to indicate" that [Petitioner] was arrested before the municipal court judge [who signed the arrest warrant] was contacted. As noted, the ACPD surrender report notes that [Petitioner] and Johnson were arrested and turned over to the Somers Point police.

The record includes page three of Somers's three-page report. In that part of the report, Somers stated that he attempted to interview [Petitioner], but [he] asked to speak with an attorney and refused to sign the form waiving his *Miranda* rights.[] Somers wrote that he contacted the municipal court judge and warrants for robbery and weapons offenses were issued. He notes that additional charges "are forth coming."

The SPPD report does not, however, support [Petitioner]'s contention that Somers did not obtain the arrest warrant until after [Petitioner]'s arrest. Somers merely commented that the municipal court judge had been contacted and warrants issued, but he does not say when. As stated previously, the warrant issued for [Petitioner]'s arrest is dated July 7, 2006, the date when [Petitioner] was arrested. The record does not support [Petitioner]'s claim that Somers did not obtain the arrest warrant until after the arrest.

[Petitioner] further claims that the arrest warrant was technically deficient. He asserts that it is unclear from the warrant

9

>whether a probable cause determination was made. [Petitioner also asserted that Somers testified that he "issued" the warrants for the arrest and was not a neutral magistrate who could issue a warrant].
>
>. . . .
>
>In her decision, the PCR judge noted that the complaint was signed under oath on July 7, 2006. The warrant also indicates that probable cause was found, and that the warrant was signed by the court administrator and issued by the municipal court judge[, not by Somers].
>
>The judge also noted that at trial, Somers had testified that he issued warrants for [Petitioner] and Johnson, but the judge found that this was a misstatement [and that the warrant clearly indicated that it had been issued and signed by a municipal court judge [who had found probable cause.]
>
>[The Appellate Division was therefore] convinced there is sufficient credible evidence in the record to support the [PCR] judge's findings of fact. Notwithstanding Somers's misstatement in his trial testimony, the record shows that the warrant was, in fact, issued by the municipal court judge in compliance with [state court rules].

(ECF No. 7-31 at 10-15).

As the Appellate Division thoroughly explained the record of this matter clearly indicates that a municipal court judge signed and issued Plaintiff's arrest warrant, that Plaintiff was thereafter arrested on that warrant by the Atlantic City Police Department, and was turned over to the Somers Point police. The record thus clearly indicates that Plaintiff was properly arrested pursuant to a warrant which was found to be valid by the Appellate Division, and that Plaintiff's arrest was therefore in no way improper. Having reviewed the record of this matter, this Court finds that the Appellate Division's findings were neither contrary to nor an unreasonable determination of the facts of Petitioner's case, and that the Appellate Division's findings were neither contrary to nor unreasonable applications of federal law – the record clearly shows that Plaintiff was properly arrested pursuant to a warrant issued by a neutral magistrate upon a finding

of probable cause as the Fourth Amendment requires, and Plaintiff's bald speculation to the contrary neither counters this strong evidence nor created a material factual issue which required a hearing for the state courts to make their determination.  Plaintiff has therefore failed to show that counsel were ineffective in failing to raise a challenge to Plaintiff's arrest, and this claim serves as no basis for habeas relief.

In his next series of claims,[3] Plaintiff seeks to argue that his trial and appellate counsel[4] were ineffective in arguing that his purportedly "illegal" arrest tainted his giving the police consent to search his vehicle, and that the evidence gathered from and as a result of the search of his vehicle should have been suppressed.  Each of these arguments, however, rests on the same flawed presumption – that Plaintiff's arrest was in any way unlawful.  As discussed above, the state courts explicitly rejected that presumption as it was contrary to the evidence.  As Petitioner's arrest pursuant to a warrant was entirely proper as discussed above, any challenge to Petitioner's consent to search his vehicle premised on his arrest being unlawful would have been entirely without merit, and counsel cannot have been ineffective in failing to file a motion or appeal raising these challenges.  *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (counsel cannot be ineffective in failing to raise a meritless argument); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (same).  Petitioner's poisonous fruit or taint arguments are thus all clearly without merit, and serve as no basis for habeas relief.[5]

---

[33] This claim is raised in Petitioner's grounds three, six, and seven, which all essentially raise the same argument – that counsel should have challenged the validity of his consent to search his vehicle and the resulting evidence as improper fruits of his allegedly unlawful arrest – in slightly different fashion.

[4] Plaintiff also raises this argument as to PCR counsel.  Any such claim, however, fails as a matter of law as explained above.  28 U.S.C. § 2254(i).

[5] The Court additionally notes that the Appellate Division found that these claims, raised for the first time in Petitioner's second PCR appeal, were procedurally barred because they were not raised

In his next claim, raised as Petitioner's claim five, Petitioner asserts that the state PCR court erred in preventing him from questioning his trial counsel as to the advice counsel gave in relation to an offered plea agreement at the evidentiary hearing held during the PCR remand. The Appellate Division upheld the PCR judge's refusal to permit Petitioner to pursue this line of questioning, explaining as follows:

> [In his initial PCR appeal, Petitioner] raised a claim that he had been denied the effective assistance of counsel because his attorney had not provided him with the State's plea offer until the day before trial. In [the Appellate Division's initial PCR appeal opinion, the Appellate Division] determined that the claim was not supported by the record because [Petitioner] signed a pretrial memo on March 18, 2008, about six months before the trial, and the memo set forth the terms of the State's plea offer. . .
>
> [Petitioner] asserts that he is now raising a different claim. In a certification dated September 25, 2015, which was filed with the PCR court following [the remand of the PCR by the Appellate Division], [Petitioner] asserted that his trial attorney was deficient because he failed to discuss with him the strengths and weaknesses of the State's case before he formally rejected the plea offer. [Petitioner] claims that if his attorney had properly advised him concerning the plea offer, he would have accepted it.
>
> [The Appellate Division was] convinced, however, that the PCR judge did not err by precluding PCR counsel from questioning [Petitioner]'s trial attorney about the advice he provided to [Petitioner] regarding the State's plea offer. This particular claim was not raised in the PCR petition field in May 2011, or in the arguments presented to the PCR court on that petition. Moreover, [Petitioner] did not raise this issue in his [first] appeal from the [PCR] court's October 10, 2012 order, denying PCR. In addition, [the Appellate Division's] remand was limited to specific issues and did not include this particular claim.

---

in Petitioner's initial PCR petition. (*See* ECF No. 7-31 at 9, 20-21.) Because these claims were barred by the state court on an adequate and independent state law procedural rule which is regularly applied, these claims are, in addition to being meritless, procedurally defaulted and Petitioner may not receive relief on those claims in federal court absent a showing of actual innocence or cause and actual prejudice. *See, e.g., Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004). As Petitioner has not shown cause, prejudice, or actual innocence, these claims are barred even had they been of arguable merit. *Id.*

12

> Here, the PCR judge correctly found that [Petitioner] was barred from raising this new issue in the remand proceeding. Indeed, our court rules provide that a [Petitioner] is barred from raising an issue that was not raised in prior proceedings unless the [Petitioner] shows that the issue could not reasonably have been raised earlier, enforcement of the procedural bar would result in a fundamental injustice, or denial of relief would be contrary to a new rule of constitutional law, made retroactive to [the Petitioner's] petition. [N.J. Court R.] 3:22-4(a)(1)-(3). Because [Petitioner]'s claim does not fall within any of these exceptions, he is barred from raising it at this time. *See State v. Reevey*, 417 N.J. Super. 134, 148 (App. Div. 2010).

(ECF No. 7-31 at 16-17).

Under the procedural default doctrine, "federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds." *Dretke v. Haley*, 541 U.S. 386, 392 (2004). Habeas courts may therefore not review the wisdom of state law procedural hurdles, and may in turn generally "not address the merits of a procedurally-defaulted claim if the state court opinion includes a plain statement indicating the judgment rests on a state law ground that is both "independent" of the merits of the federal claim and an "adequate support for the court's decision." *Campbell v. Burris*, 515 F.3d 172, 176 (3d Cir. 2008) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). A habeas petitioner may only obtain relief on a claim which has been procedurally barred by such a state court ground where he either shows cause and actual prejudice for the default, or that he is actually innocent of the crime for which he was convicted. *Dretke*, 541 U.S. at 393.

Here, Petitioner asserts that the state courts erred in applying their own PCR procedural rules – rules which are clearly independent of the merits of Petitioner's claim and in any event are adequate to support the state court's refusal to hear Petitioner's belated plea-related claim. As the rule in question is clearly an adequate and independent state law ground, this Court has no authority to second-guess the applicability of the state court procedural ruling which barred Petitioner's plea

13

claim. To the extent that Plaintiff contends only that the state court erred in barring his claim under state law, this Court may not grant him relief. *Coleman*, 501 U.S. at 730-31.

To the extent Petitioner is instead truly trying to re-raise his belated claim of ineffective assistance of counsel related to his plea agreement in this Court, Petitioner may not proceed on that claim, which was clearly defaulted in state court for the reasons expressed in the quote from the Appellate Division recounted above, absent a showing of either cause and actual prejudice or actual innocence. Petitioner has not, and almost certainly cannot show his actual innocence – indeed, the theory underlying Petitioner's defaulted claim is the idea that he wished to plead *guilty*. In light of the strong evidence of Petitioner's guilt – including the admissions of his codefendant and the physical evidence recovered following Petitioner's consent to search – Petitioner has failed to show actual innocence, and thus could only proceed with his underlying plea claim if he could show cause for the default and actual prejudice.

In this context, cause requires a showing that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim." *Parkin v. United States*, 565 F. App'x 149, 151-52 (3d Cir. 2014) (quoting *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005)). Actual prejudice in turn requires a showing that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982). Here, Petitioner has shown no reason he could not have raised this claim in his initial PCR proceeding – he was clearly aware of the advice he received in regards to the plea as he was party to those conversations, and could have raised the issue in his initial PCR proceeding. Instead, he waited several years to attempt to raise the issue during a limited PCR remand. As Petitioner has failed to show that any external factor prevented him from raising his plea related claim either on his own or through counsel, he has failed to show cause to evade

the procedural default bar. Petitioner's claim is therefore barred, and this Court cannot grant him relief on his plea-related claim.

In his final claim, Petitioner's ground one, Petitioner asserts that he received ineffective assistance of trial counsel during the plea trial phase. Specifically, Petitioner argues that counsel delayed in providing him a copy of a plea agreement until the eve of trial, did not provide discovery, and did not adequately investigate the case or Petitioner's proposed witnesses. Petitioner also contends that counsel failed to adequately move to get complete discovery or file a motion to get a tally of grand jury votes. As one court in this District has explained,

> [i]n *Strickland*, the Supreme Court held that trial counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." 466 U.S. at 691. "The failure to investigate a critical source of potentially exculpatory evidence may present a case of constitutionally defective representation," and "the failure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness." *United States v. Travillion*, 759 F.3d 281, 293 n. 23 (3d Cir. 2014) (internal quotations omitted); *see also United States v Gray*, 878 F.2d 702, 711 (3d Cir. 1989) (noting that a complete absence of investigation usually amounts to ineffective assistance because a counsel cannot be said to have made an informed, strategic decision not to investigate); *United States v. Baynes*, 622 F.2d 66, 69 (3d Cir. 1980).
>
> Where a Petitioner can show that counsel's failure to investigate amounts to deficient performance, he must still show prejudice. In order to do so,
>
>> a defendant basing an inadequate assistance claim on his or her counsel's failure to investigate must make "a comprehensive showing as to what the investigation would have produced. The focus of the inquiry must be on what information would have been obtained from such an investigation and whether such information, assuming admissibility in court, would have produced a different result.

15

> *United States v. Askew*, 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman*, 819 F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop*, 634 F.3d 931, 939 (7th Cir. 2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective assistance, the petitioner has the burden of providing the court with specific information as to what the investigation would have produced"); *United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome" of Petitioner's case); *accord Untied States v. Garvin*, 270 F. App'x 141, 144 (3d Cir. 2008).

*Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).

The Appellate Division rejected all of Petitioner's inadequate preparation contentions. As to the issue regarding the alleged late disclosure of the plea agreement, that claim was rejected as being directly belied by the record. (ECF No. 7-31 at 16.) The Appellate Division likewise affirmed the PCR judge's rejection of Petitioner's remaining arguments following a hearing:

> Here, the PCR judge found that [Petitioner's] trial attorney had provided [him] with all discovery. That finding was based on the testimony of [trial counsel], the testimony of the assistant prosecutors who handled the matter, and the documentary evidence presented at the remand hearing. The judge noted that the discovery provided to [Petitioner] included McGuire's statement and the statements of the other witnesses involved in this matter.
>
> In addition, the judge found that defense counsel had investigated every potential witness that [Petitioner] identified. The judge noted that [Petitioner]'s employer in New Hampshire "proved to be a dead end" and counsel believed he could establish by other means that [Petitioner] wore a particular type of mask for his work.
>
> The judge also found that [Petitioner]'s attorney elected as a matter of sound trial strategy not to call a witness whose wife had had an affair with [Petitioner]. The judge noted that the witness had indicated he did not intend to help [Petitioner] in any way. The judge added that counsel had checked on other potential witnesses, but "none bore any fruit."
>
> The judge therefore determined that [Petitioner] failed to establish the first prong of the *Strickland* test because he failed to show that counsel's representation was deficient. The judge added,

16

> however, for the sake of completeness, that [Petitioner] also failed to satisfy *Strickland's* second prong because he had not shown that the results of the proceeding would have been different if counsel had handled the matter differently.
>
> The judge wrote that there was overwhelming evidence of [Petitioner]'s guilt. That evidence included the gloves, hoodie, and masks recovered by the police, DNA evidence, McGuire's testimony, the testimony of McGuire's girlfriend, and the testimony of [Petitioner]'s former girlfriend.
>
> We are convinced there is sufficient credible evidence in the record to support the PCR judge's factual findings and conclusion that [Petitioner] was not denied the effective assistance of trial counsel.

(ECF No. 7-31 at 19-20.)

The Appellate Division's rejection of Petitioner's claims was neither contrary to nor an unreasonable application of the facts at hand or applicable Supreme Court precedent. Petitioner has utterly failed to show that counsel failed to investigate or prepare for trial – the testimony at the PCR hearing clearly indicates that counsel provided Petitioner with the discovery, sought out any and all witnesses, and did his best to represent Petitioner in the face of substantial evidence of Petitioner's guilt. Petitioner has likewise failed to show what benefit would have accrued had counsel undertaken any further investigations along the lines he suggests – counsel did explore the witnesses Petitioner wishes he had and found them unhelpful, and did seek to establish that the masks in question matched those used for Petitioner's work, albeit through a different means than Petitioner preferred. Petitioner has utterly failed to show any additional witnesses or information existed that would have affected the outcome of his trial, and has not shown that any motion challenging his indictment or discovery would have been in any way successful. As counsel was not deficient and Petitioner has failed to show that he was prejudiced, and because Petitioner has therefore failed to show that the Appellate Division's decision was in any way improper, Petitioner has failed to show any basis for habeas relief. Petitioner's habeas petition is therefore denied.

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are all clearly either without merit or procedurally barred for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V. CONCLUSION

In conclusion, Petitioner's habeas petition (ECF No. 1) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability. An appropriate order follows.

*Karen M. Williams*
Hon. Karen M. Williams,
United States District Judge